[Cite as *Northridge Local Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 2022-Ohio-495.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

NORTHRIDGE LOCAL SCHOOLS     :
BOARD OF EDUCATION     :
    :    Appellate Case No. 29179
      Appellee     :
    :    BTA Case No. 2020-2397
v.     :
    :    (Administrative Appeal from Board of
MONTGOMERY COUNTY BOARD OF     :    Tax Appeals)
REVISION, et al.     :
    :
    Appellees/Appellant     :

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of February, 2022.

. . . . . . . . . . .

CHARLES F. ALLBERY, III, Atty. Reg. No. 0006244, 893 South Main Street, #386, Englewood, Ohio 45322
      Attorney for Appellant, Dayton Fun Hotels, LLC

LAURA B. MARIANI, Atty. Reg. No. 0063284, 301 West Third Street, P.O. Box 972, Dayton, Ohio 45422
      Attorney for Appellees, Montgomery County Auditor & Montgomery County Board of Revision

MARK H. GILLIS, Atty. Reg. No. 0066908, 547 Perimeter Drive, Suite 150, Dublin, Ohio 43017
      Attorney for Appellee, Northridge Local Schools Board of Education

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Dayton Fun Hotels, LLC, appeals from a decision of the Ohio Board of Tax Appeals (BTA), which vacated the Montgomery County Board of Revision's (BOR) decision and remanded the matter to the BOR with instructions to dismiss Dayton Fun Hotels' complaint as untimely. For the following reasons, the BTA's decision will be affirmed.

## I. Facts and Procedural History

{¶ 2} On March 9, 2020, Ohio's governor declared a state of emergency due to the COVID-19 pandemic. Executive Order 2020-01D. On March 27, 2020, also in response to the COVID-19 pandemic, the Ohio legislature passed an emergency relief bill that, among other things, tolled certain time limitations and deadlines. 2020 Am.Sub.H.B. 197. The governor signed the bill but used a line-item veto to delete the phrase "or deadline" from Section 22(A)(10) of the bill. Based on its understanding of H.B. 197, the Montgomery County Board of Revision publicized on its website that "the deadline for filing property value appeals with the Montgomery County Board of Revision has been extended. * * * **The new deadline will be August 24**. The normal statutory deadline for filing Board of Revision appeals is March 31." (Emphasis sic.)

{¶ 3} On July 31, 2020, Dayton Fun Hotels filed a complaint challenging the 2019 tax valuation of its property located at 2301 Wagner Ford Road in Montgomery County. The Northridge Local Schools Board of Education (BOE) filed a counter-complaint, asserting that the fair market value was $2.1 million, the assessed value. A hearing was held on October 15, 2020, during which the BOE moved to dismiss Dayton Fun Hotels' complaint due to its being filed after the March 31, 2020 deadline. (A transcript of the

BOR hearing is not part of the record before us.) On December 2, 2020, the BOR reduced the property's valuation from $2.1 million to $911,500.

{¶ 4} Twelve days later, the BOE appealed the BOR's decision to the BTA. The BOE also filed a motion asking the BTA to remand the matter to the BOR with instructions to dismiss the complaint as untimely. The BOR and Dayton Fun Hotels filed separate memoranda opposing the motion.

{¶ 5} On June 3, 2021, the BTA granted the BOE's motion. Relying on *Porat Group 3, LLC v. Cuyahoga Cty. Bd. Of Revision*, BTA No. 2020-1399 (Jan. 19, 2021), a prior BTA decision on the same issue, the BTA rejected the argument that H.B. 197 had tolled the time by which a property valuation complaint had been required to be filed. It reasoned: "The Governor vetoed the portion of the bill that would arguably have extended that deadline." The BTA noted that compliance with statutory filing requirements, including the filing deadline, is a mandatory, jurisdictional requirement that cannot be waived by a tax official. Accordingly, the BTA vacated the BOR's decision and remanded the matter with instructions to dismiss the underlying complaint as untimely.

{¶ 6} Dayton Fun Hotels appeals from the BTA's decision, raising seven assignments of error. The crux of all the assignments of error is that the BTA erred in concluding that H.B. 197 did not toll the filing requirement in R.C. 5715.19(A)(1) and, thus, that Dayton Fun Hotels' complaint was untimely. Consequently, we will address them together.

{¶ 7} Before turning to the issue before us, we note that Dayton Fun Hotels and the BOE have attached documents to their appellate briefs. In determining this appeal, our review is limited to the certified transcript of the record of the proceedings of the BTA

and the evidence considered by the BTA in making its decision. *See* R.C. 5717.04. With the exception of legal authority attached to the appellate briefs, we cannot consider the parties' attachments unless they also were part of the record and evidence before the BTA.

## II. Timeliness of Taxpayer's Complaint

{¶ 8} We review a decision of the BTA for whether it is "reasonable and lawful." R.C. 5717.04; *NWD 300 Spring, L.L.C. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 193, 2017-Ohio-7579, 87 N.E.3d 199, ¶ 13. If the decision is both reasonable and lawful, we must affirm. *Id*. However, questions of law are reviewed de novo. *Kettering City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 2d Dist. Montgomery No. 2015-2331, 2018-Ohio-2325, ¶ 12. "[A] reviewing court does not hesitate to reverse BTA decisions that are based on incorrect legal conclusions." *Id*.

{¶ 9} In this case, the sole issue is whether Dayton Fun Hotels timely filed its complaint with the BOR, which requires our interpretation of relevant statutes. "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent" as expressed in the plain meaning of the statutory language. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9; *see also Gabbard v. Madison Local School Dist. Bd. of Edn.*, Ohio Slip Opinion No. 2021-Ohio-2067, ___ N.E.3d ___, ¶ 13. "To discern that intent, we first consider the statutory language, reading all words and phrases in context and in accordance with the rules of grammar and common usage. We give effect to the words the General Assembly has chosen, and we may neither add to nor delete from the statutory language." (Citations omitted.) *Gabbard* at ¶ 13. When the statutory language is clear and unambiguous, we apply the words as written. "An

unambiguous statute is to be applied, not interpreted." *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 190, 404 N.E.2d 159 (1980); *Bowman v. South Vienna*, 2d Dist. Clark No. 2021-CA-38, 2021-Ohio-4587, ¶ 9.

{¶ 10} Persons who own taxable real property may file a complaint with the county auditor challenging the determination of the total valuation or assessment for that parcel. R.C. 5715.19(A)(1)(d). Such complaints are presented by the county auditor to the county board of revision. R.C. 5715.19(A)(1). In general, complaints against valuation must be filed with the county auditor "on or before the thirty-first day of March of the ensuing tax year or the date of closing of the collection for the first half of real and public utility property taxes for the current tax year, whichever is later[.]" R.C. 5715.19(A)(1).

{¶ 11} Ordinarily, the later date is March 31, and "a taxpayer protesting the valuation of a property must file a complaint by March 31 of the year succeeding the tax year in question." *Life Path Partners, Ltd. v. Cuyahoga Cty. Bd. of Revision*, 152 Ohio St.3d 238, 2018-Ohio-230, 94 N.E.3d 565, ¶ 1. However, it is not necessarily so. Upon application of the county auditor and county treasurer, the tax commissioner may extend the time for payment of taxes if the commissioner "determines that penalties have accrued or would otherwise accrue for reasons beyond the control of the taxpayers of the county." R.C. 323.17. It is, though, possible for the date of closing of the collection for the first half of real and public utility property taxes for the current tax year to be after March 31.

{¶ 12} The question before us is the effect of H.B. 197, the COVID-19 emergency relief statute, as enacted, on the requirements of R.C. 5715.19(A)(1). We focus on Section 22 of H.B. 197, which concerns the tolling of statutes of limitation and other time

limits and deadlines.   When it was passed by the General Assembly, that section read, in its entirety:

SECTION 22. (A) The following that are set to expire between March 9, 2020, and July 30, 2020, shall be tolled:

(1) *A statute of limitation, as follows*:

(a) For any criminal offense, notwithstanding any other provision of law to the contrary, the applicable period of limitation set forth in section 2901.13 of the Revised Code for the criminal offense;

(b) When a civil cause of action accrues against a person, notwithstanding any other provision of law to the contrary, the period of limitation for commencement of the action as provided under any section in Chapter 2305. of the Revised Code, or under any other provision of the Revised Code that applies to the cause of action;

(c) *For any administrative action or proceeding, the period of limitation for the action or proceeding as provided under the Revised Code or the Administrative Code, if applicable*.

(2) The time within which a bill of indictment or an accusation must be returned or the time within which a matter must be brought before a grand jury;

(3) The time within which an accused person must be brought to trial or, in the case of a felony, to a preliminary hearing and trial;

(4) Time deadlines and other schedule requirements regarding a juvenile, including detaining a juvenile;

(5) The time within which a commitment hearing must be held;

(6) The time by which a warrant must be issued;

(7) The time within which discovery or any aspect of discovery must be completed;

(8) The time within which a party must be served;

(9) The time within which an appearance regarding a dissolution of marriage must occur pursuant to section 3105.64 of the Revised Code;

(10) *Any other criminal, civil, or administrative time limitation or deadline under the Revised Code.*

(B) This section applies retroactively to the date of the emergency declared by Executive Order 2020-01D, issued on March 9, 2020.

(C) Division (A) of this section expires on the date the period of emergency ends or July 30, Am. Sub. H. B. No. 197 133rd G.A. 339 2020, whichever is sooner.

(Emphasis added.)   2020 Am.Sub.H.B. 197, as enrolled.

{¶ 13} The governor deleted the phrase "or deadline" from Section 22(A)(10).   In doing so, the governor explained the deletion, stating:

This provision is intended to apply only to criminal statute of limitations, civil statute of limitations, administrative statute of limitations and other statutorily created time limitations in court cases.   Removing the boxed language clarifies that this provision does not apply to statutory tax deadlines or due dates, including those tax deadlines or due dates adjusted elsewhere in this bill.   The Tax Commissioner has the authority to

individually extend tax deadlines and due dates based on particularized situations. All other state agencies, boards and commissions will work with Ohio citizens in individual circumstances. This clarification, and maintaining revenue sources, such as the sales tax, which has already been collected by vendors but not yet remitted to the State and distributed to local governments, to fund essential government services, is imperative during the duration of the Governor's COVID-19 emergency declaration. Therefore, this veto is in the public interest.

https://www.legislature.ohio.gov/Assets/LegislationDocuments/133/VetoMessage AmSubHB197.pdf.

{¶ 14} On appeal, Dayton Fun Hotels, as well as the BOR and the Montgomery County Auditor, claim that R.C. 5715.19(A)(1) was tolled by H.B. 197. Dayton Fun Hotels asserts that the tolling order "immediately tolled, retroactive to March 9, 2020, all statute of limitations, time limitations, and deadlines in the Ohio Revised Code." (Appellant's Brief, citing In re Tolling of the Time Requirements Imposed by Rules Promulgated by the Supreme Court and Use of Technology, 158 Ohio St.3d 1447, 2020-Ohio-1166, 141 N.E.3d 974 (Table).) But, due to the governor's deletion of the phrase "or deadline" from Section 22(A)(10), the enacted COVID-19 emergency relief statute tolled the statute of limitations, time limitations and deadlines enumerated in Section 22(A)(1)-(9), but tolled only other criminal, civil, or administrative *time limitations* in the Ohio Revised Code. Not all statutory "deadlines" were tolled.

{¶ 15} The Montgomery County Auditor and BOR assert that the March 31 date in R.C. 5715.19(A)(1) is not a "tax deadline" as set forth by the governor in his veto, but

rather a "limitation period" and/or an "administrative time limitation" for filing complaints against valuation with the BOR. They therefore contend that the March 31 filing requirement was tolled under either Section 22(A)(1)(c) or (A)(10).

{¶ 16} The distinction between a "statute of limitation," a "time limitation," and a "deadline" is pivotal. Those terms are not defined in H.B. 197 or elsewhere in the Ohio Revised Code. A "statute of limitations" has been described as (1) "[a] law that bars claims after a specified period; specif., a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)", or (2) "[a] statute establishing a time limit for prosecuting a crime, based on the date when the offense occurred." *Black's Law Dictionary* (11th Ed.2019), Statute of Limitations. Similar to statutes of limitations, "time limitations" generally have referred to periods of time within which a certain action must be taken. *See, e.g., Black's Law Dictionary* (11th Ed.2019), Time Limit ("A prescribed period by the end of which some task must be completed").

{¶ 17} In contrast, a deadline is commonly understood to mean "the time by which something must be finished or completed; the latest time for finishing something." https://www.dictionary.com/browse/deadline; *see also, e.g., Black's Law Dictionary* (11th Ed.2019), Deadline ("A cutoff date for taking some action"); *Merriam-Webster Dictionary* (defining deadline as "a date or time before which something must be done"); *Collins Dictionary* ("A deadline is a time or date before which a particular task must be finished or a particular thing must be done.").

{¶ 18} Some dictionaries define a "time limit" as a "deadline." *See* Collins Dictionary ("A time limit is a date before which a particular task must be completed.").

However, H.B. 197 uses both terms, and we must interpret a statute to give effect to all the statute's words. *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-Ohio-3832, 161 N.E.3d 603, ¶ 10. To interpret them synonymously would render the use of both terms in the enrolled bill, as well as the deletion of "or deadline" in the enacted bill, meaningless.

{¶ 19} H.B. 197 refers to the term "deadline" 12 times (including in Section 22), and its usage is consistent with the word's common definition. For example, the term deadlines in the section related to elections refers to specific revised dates by which actions were required to be taken. *See* H.B. 197, Section 32(C)(1)(a); Section 32(C)(3). Section 17 permits the superintendent to waive or extend deadlines for certain annual requirements regarding schools and school employees. Albeit without using the term "deadline," H.B. 197 also extends "the date by which action is required" concerning various licenses.

{¶ 20} The Ohio Supreme Court has repeatedly referred to the March 31 date in R.C. 5715.19(A)(1) as a "statutory deadline" for filing a complaint related to the prior tax year. *See, e.g., Disciplinary Counsel v. Farris*, 157 Ohio St.3d 527, 2019-Ohio-4810, 138 N.E.3d 1134 (counsel failed to file the board of revision tax appeal "by the March 31, 2013 statutory filing deadline"); *Life Path Partners, Ltd.*, 152 Ohio St.3d 238, 2018-Ohio-230, 94 N.E.3d 565, at ¶ 2 (referring to March 31 as a "deadline"); *Kohl's Illinois, Inc. v. Marion Cty. Bd. of Revision*, 140 Ohio St.3d 522, 2014-Ohio-4353, 20 N.E.3d 711, ¶ 26 (commenting, as an example, that "the March 31 deadline for filing complaints" is jurisdictional); *L.J. Smith, Inc. v. Harrison Cty. Bd. of Revision*, 140 Ohio St.3d 114, 2014-Ohio-2872, 16 N.E.3d 573, ¶ 22 (discussing the mailbox rule as it relates to the March 31

"deadline"); *Sheldon Rd. Assocs., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 131 Ohio St.3d 201, 2012-Ohio-581, 963 N.E.2d 794, ¶ 18 ("Sheldon acknowledges that its complaint –filed in December 2008 – was filed after March 31, 2008, the statutory deadline for complaints relating to the 2007 tax year. That deadline had been held to be jurisdictional.").

{¶ 21} The Montgomery County Auditor and BOR assert that the Ohio Supreme Court's recent decision in *Chapman Ents., Inc. v. McClain*, Ohio Slip Opinion No. 2021-Ohio-2386, __ N.E.3d __, which concerned whether H.B. 197 tolled the time for filing an appeal with the BTA, requires reversal in this case.   In *Chapman,* the tax commissioner upheld tax assessments in two cases on April 29, 2020, and service of the decisions was completed on May 4, 2020.   Under R.C. 5717.02(B), Chapman had 60 days from the date of service to file an appeal with the BTA, which (after taking the July 4th holiday into account) would have expired on July 6, 2020.   Chapman filed notices of appeal on July 27, and the tax commissioner moved to dismiss the appeals as untimely.   The BTA rejected Chapman's argument that the time for filing the appeals was tolled by H.B. 197 and dismissed the appeals.

{¶ 22} The Ohio Supreme Court reversed the BTA, holding that Section 22(A)(1)(c) of H.B. 197 tolled Chapman's appeal period.   *Id*. at ¶ 13.   The supreme court reasoned:

> Although R.C. 5717.02 speaks of an "appeal" rather than a "limitation period," the 60-day period for filing an appeal with the BTA is functionally the same as a 60-day limitation period for initiating an administrative proceeding at the BTA.   Accordingly, Chapman's appeal deadlines were tolled under Section 22(A)(1)(c) of H.B. 197.   Even if Section 22(A)(1)(c)

did not apply, Section 22(A)(10) of H.B. 197 would toll the time limit for filing an appeal with the BTA because the 60-day period prescribed by R.C. 5717.02(B) would constitute an "administrative time limitation under the Revised Code" that was not otherwise tolled.

*Id.* at ¶ 13.

{¶ 23} We find the appeal period in *Chapman* to be distinguishable from the filing requirement in R.C. 5715.19(A)(1). *Chapman* concerned a 60-day period of time for filing an appeal, which is consistent with the definition of a time limitation. In contrast, the case before us involves a specific date by which an action needed to be taken: a property valuation complaint must be filed on the latter of (1) March 31 or (2) the date of closing of the collection for the first half of real and public utility property taxes for the current tax year. The March 31 date does not constitute a statute of limitations, as needed to satisfy Section 22(A)(1)(c) of H.B. 197, and it is not a time limitation under Section 22(A)(10).

{¶ 24} In summary, we hold that the filing requirement of R.C. 5715.19(A)(1) is a deadline which, due to the governor's deletion of the words "or deadline" from Section 22(A)(10), was not tolled by H.B. 197. The BTA's decision, which reached this same conclusion, was reasonable and lawful.

{¶ 25} Dayton Fun Hotels notes that the Montgomery County BOR website informed the public that the deadline for filing an appeal with the BOR was extended until August 24, 2020, and that it reasonably relied on that information. It states, upon information and belief, that the Montgomery County Auditor and BOR extended the time for filing a valuation complaint upon the advice of the Montgomery County Prosecutor's

Office. Dayton Fun Hotels further indicates that, in reliance on the COVID-19 emergency relief bill, other boards of revision in Ohio similarly extended the time within which property owners were required to file valuation complaints. Dayton Fun Hotels contends that it justifiably relied on the published pronouncements of the Montgomery County Auditor and, thus, principles of estoppel should bar a finding that its complaint was untimely.

{¶ 26} "[T]he doctrine of equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon the party's conduct." *State Farm Mut. Auto. Ins. Co. v. Ingle*, 180 Ohio App.3d 201, 2008-Ohio-6726, 904 N.E.2d 934, ¶ 32 (2d Dist.), quoting *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App.3d 292, 295, 638 N.E.2d 174 (9th Dist.1994). To successfully raise a claim of equitable estoppel, the party asserting the estoppel must have relied on conduct of the other party in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that the other party's conduct was misleading. *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶ 34; *Bradley v. Islamic Ctr. of Peace, Inc.*, 2d Dist. Montgomery No. 29134, 2021-Ohio-3756, ¶ 9.

{¶ 27} It is well established that the doctrine of equitable estoppel is inapplicable against a political subdivision when the political subdivision is engaged in a governmental function. *E.g., Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 25; *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145-146, 555 N.E.2d 630 (1990). While we are sympathetic to the position in which Dayton Fun Hotels finds itself, we cannot apply the doctrine of equitable estoppel in this case.

{¶ 28} Dayton Fun Hotels' assignments of error are overruled.

### III. Conclusion

{¶ 29} The BTA's decision will be affirmed.

. . . . . . . . . . . . .


TUCKER, P. J. and WELBAUM, J., concur.


Copies sent to:

Charles F. Allbery, III
Laura G. Mariani
Mark H. Gillis
Ohio Tax Commissioner