[Cite as *Geauga Park Dist. v. Geauga Cty. Budget Comm.*, 2025-Ohio-3159.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Geauga Park District, | : | |
| Appellant-Appellee, | : | No. 24AP-672 |
| | | (BTA No. 2021-1723) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Geauga County Budget Commission, | : | |
| Appellee-Appellant. | : | |

D E C I S I O N

Rendered on September 4, 2025

**On brief:** *Thrasher, Dinsmore & Dolan LPA*, *Todd C. Hicks*, and *Bridey Matheney*, for appellee, Geauga Park District. **Argued:** *Todd C. Hicks.*

**On brief:** *James R. Flaiz*, Geauga County Prosecutor, and *Kristen Rine*, for appellant, Geauga County Budget Commission. **Argued:** *Kristen Rine.*

APPEAL from the Ohio Board of Tax Appeals

JAMISON, P.J.

{¶ 1} Appellant, Geauga County Budget Commission ("commission"), appeals from a decision and order of the Ohio Board of Tax Appeals ("BTA") vacating the commission's determination and remanding the matter for further proceedings. For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 14, 2021, appellee, Geauga Park District ("GPD") submitted its proposed budget for 2022 to the commission. Subsequently, the commission notified GPD that there were several issues with its proposed budget. In anticipation of the budget

meeting scheduled for August 16, 2021, GPD sought clarification regarding the issues with its budget but did not receive a response from the commission.

{¶ 3} At the budget meeting, the commission detailed the errors in GPD's proposed 2022 budget. Those errors included a failure to include data from 2019 and the duplication of data from 2021. These mistakes resulted in the proposed budget failing to account for $1,920,661. Counsel for GPD asked that it be permitted to correct the errors and return to the next session to present the updated budget. However, that request was denied and the commission approved GPD's budget with a reduction of approximately $1.9 million.

{¶ 4} A second special budget meeting was scheduled for August 27, 2021. The day before that meeting, GPD, through counsel, requested an opportunity to be heard on its 2022 budget. However, the commission denied their request stating that it would violate Ohio sunshine laws and the budget had already been approved, so there was nothing else to be done. At the special budget meeting, the commission finalized the reduction of GPD's budget in an amount of $1,879,267. Although present, GPD representatives were not invited to speak with the commission.

{¶ 5} GPD appealed the commission's decision to the BTA.

{¶ 6} A hearing was held before the BTA. GPD presented the testimony of its executive director, John Oros, and its current director of finance, Jennifer Pae.

{¶ 7} Following the hearing, the BTA vacated the commission's decision and remanded the case. The BTA stated that on remand, GPD may submit a new proposed 2022 tax budget and shall be given the opportunity to have a continued hearing before the commission. It instructed the parties to work collaboratively to finalize GPD's 2022 budget.

{¶ 8} It is from this decision that the commission now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 9} The commission assigns the following five assignments of error for our review:

[1.] The BTA failed to carry out its statutory duty under R.C. 5705.37 to conduct a *de novo* review of the matter presented to the Budget Commission.

[2.] The BTA exceeded its statutory authority under R.C. 5705.37 by vacating Appellant's determination and remanding the case to Appellant for further proceedings.

[3.] The BTA exceeded its statutory authority under R.C. 5717.03 by vacating Appellant's determination and remanding the case to Appellant without proper findings for the need for further proceedings.

[4.] The BTA has unlawfully ordered that Appellee Geauga Park District may submit a new proposed 2022 tax budget for consideration by Appellant, in violation of the statutory budget scheme and timeline set forth in R.C. 5705.27 through R.C. 5705.36.

[5.] The BTA abused its discretion in reaching factual conclusions in contravention of evidence in the record before it.

## III. STANDARD OF REVIEW

{¶ 10} R.C. 5717.04 confers jurisdiction over appeals from the BTA on this court and sets forth our standard of review.

> If upon hearing and consideration of such record and evidence the court decides that the decision of the [BTA] appealed from is reasonable and lawful it shall affirm the same, but if the court decides that such decision of the board is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification.

R.C. 5717.04. Accordingly, if a BTA decision is both reasonable and lawful, we must affirm. *NWD 300 Spring, L.L.C. v. Franklin Cty. Bd. of Revision*, 2017-Ohio-7579, ¶ 13. A judgment is unreasonable when "there is no sound reasoning process" to support such judgment. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 11} This court defers to the BTA's factual findings if they are supported by reliable and probative evidence in the record. *Corex Partners L.L.C. v. Franklin Cty. Bd. of Revision*, 2020-Ohio-3865, ¶ 7 (10th Dist.). The BTA possesses "wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 2005-Ohio-3096, ¶ 9. "Nevertheless, although the BTA is responsible for determining factual issues, this court will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Biskind v. Harris*, 2024-Ohio-5067, ¶ 10 (10th Dist.). We review such

questions of law de novo. *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 2017-Ohio-4415, ¶ 7.

## IV.  LEGAL ANALYSIS

{¶ 12}  In its first assignment of error, the commission argues that the BTA failed to carry out its statutory duty to conduct a de novo review of this matter.  More specifically, the commission asserts that the BTA improperly used an abuse of discretion standard in focusing on how GPD was treated by the commission.  In response, GPD contends that despite its use of abuse of discretion language in its decision, the BTA did engage in a de novo review.

{¶ 13}  R.C. 5705.37 states, "The board of tax appeals, in a de novo proceeding, shall forthwith consider the matter presented to the commission, and may modify any action of the commission with reference to the budget, the estimate of revenues and balances, the allocation of the public library fund, or the fixing of tax rates."  A de novo proceeding is defined as " ' a new hearing or a hearing for the second time, contemplating an entire trial in [the] same manner in which [the] matter was originally heard and a review of [the] previous hearing.' " *Middletown v. Nichols*, 9 Ohio App.3d 135, 139 (10th Dist. 1983), quoting *Black's Law Dictionary* (5th Ed. 1979).  " 'De novo review is independent, without deference to the lower court's decision.' " *Columbus v. C.G.*, 2021-Ohio-71, ¶ 40 (10th Dist.), quoting *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

{¶ 14}  Here, the BTA held a hearing and took the testimony of two witnesses.  It afforded the commission an opportunity to present evidence.  Its decision states that it reviewed the statutory transcript, the hearing record, and the parties' briefs.  There is no indication in the record that the BTA gave deference to the commission's decision.  These are all the hallmarks of a de novo proceeding.  As such, there is no basis on which we can conclude that the BTA did not conduct a de novo proceeding.  The commission points to various abuse of discretion citations in the BTA's written decision.  However, the decision states that, depending on the issues, actions of budget commissions are either reviewed de novo or for an abuse of discretion.  In fact, the decision never specifically states which standard of review it applied.  Although the language used by the BTA implies an abuse of discretion finding, that does not mean that the BTA failed to conduct an independent de novo review.

{¶ 15} Furthermore, abuse of discretion is a stricter standard of review than a de novo proceeding. A de novo review is a review without deference to the lower court's decision or in this case, the commission's decision. *Columbus* at ¶ 40. On the other hand, an abuse of discretion only exists when the trial court has an unreasonable, arbitrary, or unconscionable attitude in reaching its decision. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Thus, even if it could be shown that the BTA did not conduct a de novo proceeding, the party that would have benefitted from the abuse of discretion standard would have been the commission. *See Nationwide Agribusiness Ins. Co. v. Heidler*, 2019-Ohio-4311, ¶ 73 (12th Dist.) (claims would have failed under either an abuse of discretion or de novo standard of review).

{¶ 16} Based on the record before us, we cannot say that the BTA failed to conduct a de novo proceeding in this matter. Appellant's first assignment of error is overruled.

{¶ 17} In its second assignment of error, the commission contends that the BTA exceeded its statutory authority by vacating the commission's determination and remanding the matter for further proceedings. More specifically, the commission argues that R.C. 5705.37 only permits the BTA to modify any action of the commission. GPD contends that R.C. 5717.03(F) gives the BTA a broad range of actions, including the ability to vacate and remand these types of matters.

{¶ 18} Although the commission correctly points out that the only action contained in R.C. 5705.37 is modification of the commission's determination, this argument ignores R.C. 5717.03(F). That section states:

> The orders of the board may affirm, reverse, vacate, modify, or remand the tax assessments, valuations, determinations, findings, computations, or orders complained of in the appeals determined by the board . . .

R.C. 5717.03(F). "The first rule of statutory interpretation is to give effect to the plain meaning of the words employed in the statute." *State ex rel. Ohio Dept. of Health v. Sowald*, 65 Ohio St.3d 338, 342 (1992). The clear and unambiguous nature of the statute's language permits the BTA to vacate and remand the commission's determination. This subsection, unlike other subsections within R.C. 5717.03, is not limited to a certain type of appeal. If the legislature wanted to put limitations on the BTA's ability to vacate and remand the commission's determinations, it would have included language limiting the

BTA's powers. However, it chose to grant the BTA a broad range of options in deciding matters before it.

{¶ 19} The commission further argues that the BTA erred in vacating and remanding the commission's determination because by conducting a hearing and taking evidence, it had all the information it needed to make a final decision. However, the BTA's decision focused on how GPD was treated during the budget process, not whether certain numbers were right or wrong. This is not a case about a miscalculation or the use of an incorrect formula. Rather, this case is about the integrity of the entire budgetary process. It should also be noted that based on a review of the record, GPD was not given an opportunity at the August 16, 2021 budget meeting to present evidence regarding its need for the $1.9 million that was cut from its budget. It is reasonable to believe that the BTA felt that the commission and GPD were in a better position to work through the numbers and determine the needs of GPD.

{¶ 20} Based on the foregoing, the BTA's decision to vacate and remand the commission's determination was both reasonable and lawful. As such, we overrule the commission's second assignment of error.

{¶ 21} In its third assignment of error, the commission contends that the BTA exceeded its statutory authority by vacating and remanding the matter without proper findings for the need for further proceedings. More specifically, the commission contends that the BTA failed to direct officers to "make the changes in their tax lists or other records which the decision requires," and failed to identify an important issue not raised on appeal requiring remand. (Appellant's Brief at 11.)

{¶ 22} R.C. 5717.03(F) states in part that "[w]hen an order of the board becomes final the tax commissioner and all officers to whom such decision has been sent shall make the changes in their tax lists or other records which the decision requires." In arguing that the BTA failed to comply with this provision, the commission is essentially contending that the BTA's decision did not provide the commission with any direction as to what it needed to do on remand. However, the BTA's decision clearly states that on remand GPD may submit a new tax budget, GPD shall be afforded the opportunity for a continued hearing, and the parties needed to work collaboratively to finalize this matter. The BTA unambiguously stated what needed to be done on remand.

{¶ 23} The commission also argues that the BTA's decision runs afoul of R.C. 5717.03(G). That subsection states that "[i]f a board finds that issues not raised on the appeal are important to a determination of a controversy, the board may remand the cause . . . ." R.C. 5717.03(G). The commission contends that the BTA failed to identify an important issue not raised on appeal before remanding this matter. However, this subsection specifically discusses a situation wherein important issues were not raised on appeal, which is not present here. Nothing in R.C. 5717.03(G) states that the BTA can only remand a matter when an appeal fails to address an issue vital to the determination of the controversy. As such, the commission's reliance on R.C. 5717.03(G) in this context is misplaced.

{¶ 24} Based on the foregoing, the BTA's decision comported with the requirements of R.C. 5717.03. Appellant's third assignment of error is overruled.

{¶ 25} In its fourth assignment of error, the commission contends that the BTA's order that GPD be able to submit a new 2022 budget violates the budgetary scheme and timeline outlined in the revised code. The commission further alleges that allowing GPD to submit a budget three years after the fiscal year in question renders the statutory budget process meaningless. We disagree.

{¶ 26} The Supreme Court of Ohio has stated:

> Ohio law requires the taxing authority of each taxing subdivision in the state . . . to adopt a tax budget for the next succeeding fiscal year on or before July 15 of each year, and to submit that budget to the county auditor on or before July 20. . . . Subsequently, the tax budgets are presented to the budget commission for review, and the proper tax levy for each taxing subdivision is certified to the appropriate taxing authority. . . . Each taxing authority must then authorize the tax levy, and certify that levy to the county auditor for collection, before the first day of October in each year, or *of such later date as approved by the Board of Tax Appeals.*

(Emphasis added.) (Citations omitted.) *State ex rel. Summit Cty. Bd. of Edn. v. Medina Cty. Bd. of Edn.*, 45 Ohio St.2d 210, 212-213 (1976). The above language considers the parties' statutory right to appeal a budget commission's determination. If we were to side with the commission under this assignment of error, it would result in a judicially created deadline by which the BTA has to decide a matter if it wants to exercise its discretion in a certain manner.

{¶ 27}   Indeed, there is no dispute that GPD submitted a timely budget in July of 2021.  Although there were mistakes contained in that budget, GPD was prepared to correct those mistakes in August of 2021, but was not given the opportunity to do so.  GPD then undertook its statutory right to appeal to the BTA.  If we were to hold that the BTA cannot allow GPD to resubmit its 2022 budget because it is too late, we would essentially be penalizing GPD for exercising their appeal rights.  Such a ruling would effectively give entities that are unhappy with a budget commission's determination a choice between accepting an unsatisfactory decision or appealing to the BTA with the risk of the appeals process taking too long to remedy any errors.  R.C. 5717.03(F) gives the BTA the ability to dispose of matters in several different ways.  The revised code contains no deadline for the BTA to reach a decision in these matters.  If the legislature wanted to include such a deadline, it could have done so.

{¶ 28}  Based on the foregoing, appellant's fourth assignment of error is overruled.

{¶ 29}  In its fifth assignment of error, the commission argues that the BTA abused its discretion in reaching factual conclusions in contravention of evidence in the record before it.  The commission makes several arguments in support of this contention.  First, the commission asserts that the BTA unreasonably allowed litigation matters involving nonparties to improperly influence its decision.  However, a review of the BTA's decision reveals that the citations to ongoing litigation between Geauga County public officials were done for contextual purposes.  Notably, a review of the analysis section of the decision reveals no references to this litigation.  Rather, the BTA focused on the statements and actions of the commission during the budget process.  In short, there is no evidence that these separate matters had any influence on the BTA's decision.

{¶ 30} The commission also argues that the BTA unreasonably concluded that GPD's budgetary mistakes were similar to errors made by other taxing authorities.  First, the commission contends that other subdivisions made "true clerical" errors, whereas GPD's errors were substantive.  (Appellant's Brief at 24.)  For example, the commission characterizes Auburn Township's mistake regarding a transfer in and out in its fire fund as a clerical error.  On the other hand, it does not characterize GPD's omission of 2019 data and duplication of 2021 data as clerical errors.

{¶ 31} In other contexts, clerical errors have been defined as mistakes or omissions, mechanical in nature, that do not involve a legal decision or judgment. *Gall v. Mariemont Windsor Square Condominium Assn.*, 175 Ohio App.3d 689, 693 (1st Dist. 2008). Specifically, "[t]he 10th district has found clerical errors to be mistakes or omissions that are mechanical in nature and apparent on the record, which do not involve any legal decision or judgment." *Nick v. Cooper*, Franklin C.P. No. 12 CV 12749, 2015 Ohio Misc. LEXIS 7473, *1 (Mar. 9, 2015), citing *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100 (1996); *see also Daniels-Rodgers v. Rodgers*, 2015-Ohio-1974, ¶ 10 (10th Dist.).

{¶ 32} In this case, GPD's omission of 2019 data and duplication of 2021 data appear to be mistakes and/or omissions that are mechanical in nature, which could have been corrected in August of 2021. At the very least, it cannot be said that the BTA unreasonably found that GPD made the same type of errors as other subdivisions. Based on the record before us, it was reasonable for the BTA to conclude that, like other subdivisions, the mistakes in GPD's budget were the result of clerical errors.

{¶ 33} The commission also contends that GPD was treated similarly to other subdivisions because the reduction in its budget was based on a lack of demonstrated need. However, based on a review of the entire record, it does not appear that GPD was given an opportunity to present its need for the reduced funds. The August 16, 2021 meeting was primarily focused on pointing out the mistakes made in GPD's budget and GPD was not permitted to speak with the commission at the August 27, 2021 special budget meeting. In his testimony before the BTA, Oros indicated he was prepared to discuss GPD's need for the reduced funds at either of the August 2021 budget meetings, but he was not able to do so.

{¶ 34} In its third argument under its fifth assignment of error, the commission alleges that the BTA ignored evidence in the record and constraints in Ohio's open meetings act when reaching conclusions about the August 27, 2021 special budget meeting. The commission's argument, as well as GPD's response, focus on the communications between the parties in the 24 hours leading up to the August 27, 2021 special budget meeting. We believe the parties' focus on these communications is misplaced. What is more relevant is that at the August 16, 2021 meeting, GPD's attorney requested that GPD be permitted to correct the mistakes and resubmit its budget. One of the commission members responded

to this request by stating, "So you can conjure up some need in the next two weeks?" (Aug. 16, 2021 Tr. at 25-26.) In fact, the analysis section of the BTA's decision does not even mention the August 27, 2021 special budget meeting. Its focus was on the actions of the commission surrounding the August 16, 2021 meeting. Based on the record before us, it cannot be said that the BTA's decision focusing on the August 16, 2021 meeting rather than the communications and constraints surrounding the August 27, 2021 special budget meeting was unreasonable or unlawful.

{¶ 35} Finally, the commission alleges that the BTA reached factual conclusions despite the only evidence in the record being contrary to its finding. Within this argument, the commission only points to one factual conclusion that was not supported by the record. The commission contends that the BTA's conclusion that GPD received so many public records requests that it had to hire legal counsel was unsupported by the record. However, this simply appears to be background information that did not affect the outcome of the decision. The commission further contends that although seemingly inconsequential, this unsupported conclusion demonstrates BTA's lack of reliance on relevant, probative evidence in this matter. However, the commission fails to point to any other conclusion that was not supported by the record. If the BTA was so careless in its consideration of the evidence, it stands to reason there would be additional examples of conclusions that were not supported by the record.

{¶ 36} In sum, we find that the BTA's decision was both reasonable and lawful. As previously stated, the BTA exercised one of its statutorily available options in vacating the commission's decision and remanding the matter for further action. Moreover, the BTA's skepticism about the commission's neutrality was supported by reliable and credible evidence. GPD was never allowed to demonstrate its need for the reduced funds during the budgetary process. Although there were mistakes in GPD's budget, unlike other subdivisions, they were not permitted to correct those mistakes and appear at a subsequent budget meeting. When GPD requested an opportunity to correct and resubmit their budget, a commission member essentially accused, without evidence, GPD of attempting to create need out of thin air. The BTA heard the testimony from two GPD officials. That testimony went unrebutted.

{¶ 37} Based on the foregoing, we cannot say that the BTA's decision was not supported by the record before it.  Appellant's fifth assignment of error is overruled.

## V.  CONCLUSION

{¶ 38} Having overruled each of the commission's five assignments of error, we affirm the judgment of the Ohio Board of Tax Appeals.

*Judgment affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

_____